

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF NORTH CAROLINA

EASTERN DIVISION

Case No. 5:22-CV-400-BO

CLINTON STRANGE,

*Plaintiff*

v.

KRAUSE AND KINSMAN, DC LLP;

a District of Columbia Limited Liability Partnership

&

Does Nos. 1 through 5,

*Defendants*  \*\*\*JURY TRIAL DEMANDED\*\*\*

_____/

## CIVIL ACTION COMPLAINT

FOR VIOLATIONS OF THE:

TELEPHONE CONSUMER PROTECTION ACT OF 1991;

FLORIDA TELEPHONE SOLICITATION ACT OF 2022;

NORTH CAROLINA - ACT TO INCREASE PROTECTIONS FOR TELEPHONE SUBSCRIBERS WHO WISH TO STOP UNWANTED TELEPHONE SOLICITATIONS AND FOR CONSUMERS WHO ENTER INTO TELEMARKETING TRANSACTIONS - OF 2003;

&

WASHINGTON COMMERCIAL ELECTRONIC MAIL ACT OF 1998

### NATURE OF SUIT:

1. The Sergeant First Class Heath Robinson Honoring Our Promise to Address

    Comprehensive Toxins Act of 2022, or PACT Act, is a bill that directly addressed the

    impact on Veterans and others who were exposed to environmental toxins, burn pits,

Case 5:22-cv-00400-BO-RJ   Document 1   Filed 10/03/22   Page 1 of 19

radiation, and Agent Orange due to their time in military service. The PACT Act also includes the Camp Lejeune Justice Act of 2022.

2. The bill is named in honor of Sergeant First Class Heath Robinson, an Ohio National Guard service member who died in 2020 due to exposure to toxic chemicals. This bill reflected a bipartisan effort to expand coverage, treatments, and resources to sick Veterans and others who were impacted by toxins due to service in the U.S. military. The bill passed Congress on August 2, 2022, and was signed into law by President Joe Biden on August 10, 2022.

3. Prior to the passage of the PACT Act, Mass Tort firms knew that there would be massive amounts of money to be made in Tort Litigation by representing Veterans and others who were impacted by toxic water exposure at Camp Lejeune between the mid-1950's and mid-1980's. Mass Tort Firms like Defendant KRAUSE AND KINSMAN, DC LLP, hereafter "KRAUSE & KINSMAN", began engaging with Marketing Partners, and Platform Providers to conduct 'intake' of Camp Lejeune Justice Act 'Claimants'.

4. KRAUSE & KINSMAN partnered with a Digital Marketing agency that sent at least one email that violated the Washington Commercial Electronic Mail Act of 1998, and based on the email/s, and Plaintiff's interaction with it during his investigation led to KRAUSE & KINSMAN's Customer Relationship Management ("CRM") System Platform partner's Platform technology ((Law Ruler Software, LLC – ("LAW RULER")) to super-aggressively try to solicit Plaintiff to sign-up for KRAUSE & KINSMAN's legal services via Robotexts and AutoDialed Calls in violation of certain State and Federal Laws as indicated below.

5. Plaintiff seeks a maximum award of Statutory Damages against all identifiable Defendants together along with injunctive relief, pre and or post judgment interest as allowable, and recovery of all cost fees and or expenses necessary to bring and litigate the action to judgment.

## JURISDICTION & VENUE:

6. Jurisdiction primarily arises in this U.S. District Court under a Federal Question as the Telephone Consumer Protection Act ("TCPA") is a federal Statute pursuant to 28 U.S.C. § 1331.

7. Supplemental Jurisdiction would be properly applied relative to the Plaintiff's State Law Claims as they are a parts of the same nucleus and set of operative facts that gives rise to federal question jurisdiction pursuant to 28 U.S.C. § 1367.

8. Venue lies proper in this U.S. District as Defendant KRAUSE & KINSMAN currently maintains an office space / call center for its agents handling 'intake' of Camp Lejeune Justice Act 'Claimants' in Greenville, North Carolina, and the object of the Plaintiff's Claims were geared toward litigation that would occur in this U.S. District. "The Eastern District of North Carolina has been designated as the exclusive jurisdiction and venue for cases filed pursuant to Section 804 of the Act, known as the Camp Lejeune Justice Act of 2022. Cases arising under this section should be filed in the correct division as provided in Local Civil Rule 40.1." per the Court's website https://www.nced.uscourts.gov/forms/Default.aspx - page last visited Sept. 26, 2022. Venue lies proper in this U.S. District pursuant to 28 U.S.C. § 1391.

## THE PARTIES:

9. Plaintiff CLINTON STRANGE, proceeding *pro se*, is an adult individual ((and a "person" as that term is defined under 47 U.S.C. § 153(39)) residing at the address of:

   CLINTON STRANGE

   7021 WINBURN DRIVE

   GREENWOOD, LA 71033

10. Defendant KRAUSE AND KINSMAN, DC LLP is a District of Columbia Limited Liability Partnership ((and a "person" as that term is defined under 47 U.S.C. § 153(39)). According to the Missouri Secretary of State, this Defendant can be served via its agent at the address of:

    INCORP SERVICES, INC.

    c/o: KRAUSE AND KINSMAN, DC LLP

    2847 S Ingram Mill Rd

    Ste A100

    Springfield, MO 65804

11. Defendants Does Nos. 1 through 5 include unknown actors liable in the scheme and procession of events whose identities are unknown to the Plaintiff at this time, but will be revealed during discovery.

## FACTUAL ALLEGATIONS:

### The Email

12. On July 21, 2022 the Plaintiff received an email in his parsmllc@gmail.com account that contained misleading, false, spoofed, and or forged header information from fVmLIF2Cuh@w4bsetlgki4lcmi.onmicrosoft.com to: kivojulia@gmail.com (an email

address not associated with Plaintiff). Onmicrosoft.com is presumptively a computer located in Washington, as Microsoft is headquartered and maintains servers at the Microsoft campus, which is the corporate headquarters of Microsoft, located in Redmond, Washington. Plaintiff represents that the attached is a true and accurate representation of the July 21, 2022, email [See Exhibit A].

13. When the Plaintiff investigated the hyperlinks associated with the email, he discovered the hidden link redirected him to a KRAUSE & KINSMAN website affiliate link as below:

    https://www.camplejeunesuit.org/?oid=124&sharedid=78&Subid1=59a9f25575d54b92a2b2712b9bae9f42&Subid2=772101577&Subid3=350414 – page last visited Sept. 26, 2022.

14. Between July 21, 2022, and August 7, 2022, the Plaintiff's parsmllc@gmail.com account was flooded with over 2 dozen more spam emails from nearly a half-dozen advertisers. Plaintiff also was filing complaints with government agencies, the advertisers, and the federal district Court in Minnesota. Plaintiff's attention was turned away from the (then one email) sent on behalf of KRAUSE & KINSMAN.

15. On August 7, 2022 at 3:25pm CST, KRAUSE & KINSMAN's Digital Marketing agent (affiliate) transmitted an identical looking email message that was transmitted to Plaintiff's parsmllc@gmail.com address that (appeared as follows) from:TI0BMzi6AfJhTLyn2O@comms.teamsnap.com to kivojulia@gmail.com . The header information was misleading, false, spoofed, and or forged. Taking the from address as true though, teamsnap.com, is hosted by Amazon Web Services, and there is the presumption that the message was transmitted from a Washington Computer located

at or around 410 Terry Ave N, Seattle, WA 98109. Plaintiff represents that the attached is a true and accurate representation of the August 7, 2022, email [See Exhibit B].

16. Sometime on the afternoon of August 7, 2022, the Plaintiff (in furtherance of his investigation) interacted with the link in either the July 21, 2022 or the August 7, 2022 email, and filled out an online contact form (providing his cellphone number ending in 6136) on the www.camplejeunesuit.org website, and at 7:02pm CST he received a text message from KRAUSE & KINSMAN's CRM Law Ruler Software Platform Robotexter from a Twilio Application to Person Interface ("API") provisioned VoIP long-code number (917) 540-5624 which contained a web link to a Law Ruler Hello Sign Document signature capture agreement form. Plaintiff clicked and reviewed the form (a legal 'intake' form / engagement letter) but navigated away without assenting to any terms or conditions, nor providing any additional information.

### The First Volley of Telephone Calls

17. KRAUSE & KINSMAN's CRM Law Ruler Software Platform Technology knew Plaintiff had opened and viewed the Hello Sign Document, and this prompted an automated call from the Law Ruler 'SoftDialer' which connected the Plaintiff with a live agent who called from a Neutral Tandem Network assigned VoIP (Local-Touch Direct Inward Dial) number (318) 661-8367 at 7:39pm CST (later that same evening – 8-7-2022). During the call (lasting a little over 2 minutes), Plaintiff tried to explain his investigation, and the emails. Plaintiff asked to not receive any more calls or emails.

18. Because Plaintiff was still *highly suspicious* that this was a massive and wide-spread identity theft ring, he dialed back the number (318) 661-8367 from another cellphone he subscribes to (318) 780-8890, to discover if the (318) 661-8367 number was "spoofed",

Page **6** of **19**

Case 5:22-cv-00400-BO-RJ   Document 1   Filed 10/03/22   Page 6 of 19

and to see who if anyone might answer while Plaintiff had KRAUSE & KINSMAN's call center agent on-the-line.

19. KRAUSE & KINSMAN's call center agent (Doe Caucasian Female- perhaps 'Sabrina') advised that she would report the emails and that (318) 780-6136 would be placed on the Do-Not-Call list.

20. The following morning on August 8, 2022, at 8:46am CST KRAUSE & KINSMAN's CRM Law Ruler SoftDialer placed an autodialed call to the Plaintiff's cellphone number (318) 780-6136 after his Do-Not-Call request had been "supposedly" logged into the system. This would be the last contact from KRAUSE & KINSMAN's CRM systems for 5 weeks.

### The Robotexts

21. Five weeks had passed since the last contact associated with KRAUSE & KINSMAN. The Digital Marketing Agent associated with the 1st July 21, 2022 email spam, and the 2nd Email Spam (believed to be linked with KRAUSE & KINSMAN *or* on their behalf) had transmitted by that time over One Hundred Sixty (160) spam emails on behalf of at least a dozen brands, and the Plaintiff's action in Minnesota 'stalled out' because that Court could not lawfully grant (Plaintiff) [a] Motion for Expedited Discovery to learn Spammer's Identity assigning reasons that reflected that Plaintiff lacked a colorable cause of action that the Court could move forward with because Plaintiff (then) could not attest to a federal Cause of Action, Diversity Jurisdiction, or a specific State Law Claim. See *Strange v. Spammer* Case No. 0:22-cv-01984-NEB-TNL DE *4 (D. Minn.) (Aug. 24, 2022). Again, the Plaintiff's attention to the matters *specific* to his claims against KRAUSE & KINSMAN was again turned away and (Plaintiff) was distracted.

22. Remembering back to ¶ 18, The Plaintiff placed the call to discover if the (318) 661-8367 number was "spoofed" *from* his other DNC registered cellphone (318) 780-8890; well, it seems that KRAUSE & KINSMAN's CRM Technology Platform went wild with information aggregated by its system in the intervening weeks of time, and later began Robotexting the Plaintiff.

23. Beginning on September 15, 2022, at 3:28pm CST Plaintiff received a generic and impersonalized Robotext from KRAUSE & KINSMAN's CRM Technology Platform (Law Ruler) located in Coral Gables, Florida from a Twilio Application to Person Interface ("API") provisioned VoIP long-code number (917) 540-5624 which contained both a generic pre-written template of text regarding KRAUSE & KINSMAN's offering of legal services in regard to a "Camp Lejeune" claim, and a web link to a Law Ruler URL. Plaintiff represents that the below Figure A is a true and accurate representation of the September 15, 2022, at 3:28pm CST Robotext, and Figure B is the Message Details.



**Figure A**



**Figure B**

24. A few days later, on September 18, 2022, at 2:10pm CST Plaintiff received a generic and impersonalized Robotext from KRAUSE & KINSMAN's CRM Technology Platform (Law Ruler) located in Coral Gables, Florida from a Twilio API provisioned VoIP long-code number (917) 540-5624 which contained both a generic pre-written template of text regarding KRAUSE & KINSMAN's offering of legal services in regard to a "Camp Lejeune" claim, and a web link to a Law Ruler URL. Plaintiff represents that the below Figure C is a true and accurate representation of the September 18, 2022, at 2:10pm CST Robotext, and Figure D is the Message Details.



**Figure C**



**Figure D**

25. A couple of days later, on September 20, 2022 at 2:30pm CST, Plaintiff received a generic and impersonalized Robotext from KRAUSE & KINSMAN's CRM Technology Platform (Law Ruler) located in Coral Gables, Florida from a Twilio API provisioned

VoIP long-code number (917) 540-5624 which contained both a generic pre-written template of text regarding KRAUSE & KINSMAN's offering of legal services in regard to a "Camp Lejeune" claim, and a web link to a Law Ruler URL. Plaintiff represents that the below Figure E is a true and accurate representation of the September 20, 2022, at 2:30pm CST Robotext, and Figure F is the Message Details.




**Figure E**         **Figure F**

26. A couple of days after that, on September 22, 2022 at 2:12pm CST Plaintiff received a generic and impersonalized Robotext from KRAUSE & KINSMAN's CRM Technology Platform (Law Ruler) located in Coral Gables, Florida from a Twilio API provisioned VoIP long-code number (917) 540-5624 which contained both a generic pre-written template of text regarding KRAUSE & KINSMAN's offering of legal services in regard to a "Camp Lejeune" claim, and a web link to a Law Ruler URL. Plaintiff represents that the below Figure G is a true and accurate representation of the September 22, 2022, at 2:12pm CST Robotext, and Figure H is the Message Details.




**Figure G**          **Figure H**

27. Ramping up on the '*sense of urgency*" and aggressiveness, the following day on September 23, 2022 at 12:30pm CST KRAUSE & KINSMAN's CRM Technology Platform transmitted a similar message as the above to Plaintiff's 8890 DNC cellphone.




**Figure I**          **Figure J**

Page **11** of **19**

Case 5:22-cv-00400-BO-RJ   Document 1   Filed 10/03/22   Page 11 of 19

28. Plaintiff represents that the above Figure I is a true and accurate representation of the September 23, 2022, at 12:30pm CST Robotext, and Figure J is the Message Details.

29. Finally, on September 25, 2022 at 2:01pm CST, KRAUSE & KINSMAN's CRM Technology Platform transmitted a similar message as the above to Plaintiff's 8890 DNC cellphone (and hopefully the last). Plaintiff represents that the below Figure K is a true and accurate representation of the September 25, 2022, at 2:01pm CST Robotext, and Figure L is the Message Details.




**Figure K**          **Figure L**

30. On the afternoon of September 25, 2022, following the transmition of the last autodialed Robotext, the Plaintiff decided to click on the associated link that was imbedded in the generic text. Plaintiff utilized his cellphones webbrowser and print-to-pdf feature to capture metadata and other information. Plaintiff represents that he was able to produce a

generic "agent instruction sheet" inclusive of a generic KRAUSE & KINSMAN agent 'pitch" script for Camp Lejeune claims – both 'inbound' and 'outbound'. Plaintiff submits the attached "Exhibit C" under seal out of respect to KRAUSE & KINSMAN and their CRM Platform provider (Law Ruler Software, LLC), because it contains a lot of information that could be regarded as proprietary and confidential "*how-the-sausage-is-made*" material. However, the Plaintiff states that the Exhibit C shows no information that would substantiate that KRAUSE & KINSMAN and their CRM Platform provider (Law Ruler Software, LLC) ever had any material spoken or written consent to place autodialed calls or Robotexts (Automated Text Messages and SMS) to the Plaintiff's DNC Registered Residential cellphone number (318) 780-8890.

### The Second Volley of Telephone Calls

31. Plaintiff has no specific recollection of interacting with KRAUSE & KINSMAN and their CRM Platform provider (Law Ruler Software, LLC) links embedded in the Robotexts (See ¶ 26) on September 22, 2022, that would have 'triggered' an autodialed call from KRAUSE & KINSMAN's call-center agent CRM Platform provider (Law Ruler Software, LLC) Technology softdialer.

32. On September 22, 2022, at 3:31pm CST Plaintiff received a "dead-air" silent abandoned autodialed call from KRAUSE & KINSMAN's call-center agent CRM Platform provider (Law Ruler Software, LLC) Technology that is termed (by Law Ruler Software, LLC a softdialer). The call duration (according to Plaintiff's call log was three (3) seconds. Plaintiff represents that the below Figure M is a true and accurate representation of the September 22, 2022, at 3:31pm CST Autodialed / Abandoned RoboCall.



**Figure M**

33. As referenced above, at ¶ 30, on the evening of September 25, 2022, following the transmission of the last autodialed Robotext, the Plaintiff decided to click on the associated link that was imbedded in the generic text. Following KRAUSE & KINSMAN's call-center agent CRM Platform provider (Law Ruler Software, LLC) Technology's *awareness* that Plaintiff (or someone associated with that 8890 number) had clicked on the link; KRAUSE & KINSMAN's call-center agent CRM Platform provider (Law Ruler Software, LLC) Technology's softdialer placed a call to Plaintiff's DNC registered cellphone number (318) 780-8890 at 7:05pm CST.



**Figure N**

Page **14 of 19**

### Plaintiff's Residential Use of His DNC Registered Cellphones

34. Plaintiff subscribed to (the) Verizon Wireless numbers (318) 780-8890, and (318) 780-6136 on April 4, 2019; later that afternoon he registered those numbers with the U.S. Federal Trade Commission's Do-Not-Call list and the Louisiana Do-Not-Call Program Registry [See Exhibits D and E respectively].

35. Plaintiff does not like to receive autodialed Robotexts and autodialed Robocalls because they are cost-shifting tools (processes) implemented by companies, corporations, and (as in this action = partnerships) that shift the economic and tangible physical and mental efforts of wasted time, money and energy onto consumers who don't want to be bothered.

36. Plaintiff has three (3) cellphones in his home for the same reason that he had (*in-times past*) three (3) wired landline phone extensions prior to disconnection in 2016. Plaintiff is a fall risk as defined by his VA Medical Team, and Plaintiff needs 3 phones at different locations in his home for safety. Plaintiff utilizes all 3 of his residential cellphones as cooking timers, bed-side alarms, and as home telemedicine tools to connect Plaintiff with his VA mental and Physical Health Providers and Pharmacists. Plaintiff utilizes his residential wireless cellphones residentially.

### KRAUSE & KINSMAN's Liability for Acts of its Agents and or Partners

37. Since late July of 2022, no reasonable tribunal could find that Plaintiff was anything less than diligent in his efforts to mitigate (stop) the harm that resulted from the spam emails, and calls. Despite numerous emails and voice conversations with KRAUSE & KINSMAN's agents the parties find *ourselves* here.

38. At all times relevant hereto, KRAUSE & KINSMAN was acting by and through its agents, servants, contractors, vendors, managers and or employees, insurers, Officers,

Partners, and or Directors who were acting in the Course and scope of their employment herein.

39. At all relevant times hereto KRAUSE & KINSMAN's agents, servants, and or employees, insurers, Officers, Partners, and or Directors who were acting in the Course and scope of their employment and or agency were acting in gross and or negligent disregard for the rights of the Plaintiff herein, and are liable to the Plaintiff as below.

## COUNTS & CAUSES OF ACTION:
## COUNT I:
## (Plaintiff v. KRAUSE & KINSMAN)
## 47 U.S.C. § 227(c)(5)   Do- Not- Call Violations

40. Plaintiff incorporates the foregoing paragraphs Nos. 1-39 as though the same were set forth at length herein.

41. Between August 7, 2022, and September 25, 2022 Defendant KRAUSE & KINSMAN acting by and through its agents, servants, contractors, vendors, managers and or employees, insurers, Officers, Partners, and or Directors placed at least eight (8) violative calls and or texts to the Plaintiff's residential registered DNC list cellphones as detailed above.

42. The record will reflect that the violations were merely negligent in nature (not willful & knowing), nonetheless Defendant KRAUSE & KINSMAN is liable to the Plaintiff for damages of up to $500 for each of the eight calls the trier of fact deems it liable to Plaintiff for under the TCPA's Do-Not-Call Provisions.

43. Defendant KRAUSE & KINSMAN is liable to the Plaintiff for damages of up to $500 for each of the eight calls and or texts referenced above totaling $4,000.00.

## COUNT II:
## (Plaintiff v. KRAUSE & KINSMAN)
## Florida Telephone Solicitation Act

44. Plaintiff incorporates the foregoing paragraphs Nos. 21-29 as though the same were set forth at length herein.

45. Between September 15, 2022, and September 25, 2022 Defendant KRAUSE & KINSMAN acting by and through its agents, servants, contractors, vendors, managers and or employees, insurers, Officers, Partners, and or Directors placed at least six (6) violative Robotexts to the Plaintiff's residential registered DNC list cellphone (318) 780-8890 as detailed above.

46. The record will reflect that the violations were merely negligent in nature (not willful & knowing), nonetheless Defendant KRAUSE & KINSMAN is liable to the Plaintiff for damages of up to $500 for each of the six calls the trier of fact deems it liable to Plaintiff for under the FTSA's Provisions.

47. Defendant KRAUSE & KINSMAN is liable to the Plaintiff for damages of up to $500 for each of the six (6) Robotexts referenced above totaling $3,000.00.

## COUNT III:
## (Plaintiff v. All Defendants)

## The Washington Commercial Electronic Mail Act ("CEMA")

## RCW Ch. 19.190 *et seq.* – Injunctive Relief

48. Plaintiff incorporates the foregoing paragraphs Nos. 1-15 as though the same were set forth at length herein.

49. Pursuant to RCW 19.190.020 Plaintiff is entitled to injunctive relief enjoining Defendants from future violations of the above cited statute. The relief sought applies extra-territorially (outside of Washington State).

50. Without being limited in the Plaintiff's complaints in regard to the Washington CEMA, and its analogous related "*hammer*" provision under the below footnote[1] cited CPA statutory provision, the Plaintiff seeks *at this time* only injunctive relief under the Washington CEMA as stated in the Complaint.

---

1- *See* RCW 19.190.020(1)(b). Although CEMA does not provide a private right of action for damages, recipients of commercial e-mails containing false or misleading subject lines can sue for injunctive relief. *Wright v. Lyft, Inc.*, 189 Wn.2d 718, 406 P.3d 1149, 1155 n. 3 (2017) ("While an action for monetary damages is limited to phishing, we note that a plaintiff may bring an action to enjoin any CEMA violation."); *see also* RCW 19.190.090(1) ("A person who is injured under this chapter may bring a civil action in the superior court to enjoin further violations."). In addition to the injunctive relief available under CEMA, a recipient of an unlawful commercial e-mail can bring a civil action against the sender under the CPA for either statutory or actual damages. *See Gragg v. Orange Cab Co., Inc.*, 145 F.Supp.3d 1046, 1051 (W.D. Wash. 2015). CEMA explicitly provides: It is a violation of the consumer protection act, chapter 19.86 RCW, to conspire with another person to initiate the transmission or to initiate the transmission of a commercial [e-mail] message that ... [c]ontains false or misleading information in the subject line. RCW 19.190.030(1)(b). Thus, "[u]nder RCW 19.190.030(1), it is a violation of the Washington CPA to violate RCW 19.190.020." *Ferguson v. Quinstreet, Inc.*, C07-5378RJB, 2008 WL 3166307, at *10 (W.D. Wash. Aug. 5, 2008), *aff'd sub nom. Ferguson v. Active Response Grp.*, 348 F. App'x 255 (9th Cir. 2009). Interpreting RCW 19.190.030(1)(b), Washington and federal courts have held that a plaintiff states a CPA claim solely by alleging the transmission of a commercial e-mail containing false or misleading information in the subject line. *See State v. Heckel,* 143 Wn.2d 824, 24 P.3d 404, 407 (2001) ("RCW 19.190.030 makes a violation of [CEMA] a per se violation of the [CPA]."). Indeed, by alleging a CEMA violation of RCW 19.190.020, a plaintiff alleges all five elements of a CPA violation: "(1) an unfair or deceptive act or practice, (2) in trade or commerce, (3) that impacts the public interest, (4) which causes injury to the party in his business or property" that is (5) causally linked to the unfair or deceptive act. *See Gordon v. Virtumundo, Inc.,* 575 F.3d 1040, 1065 (9th Cir. 2009) (citing *Hangman Ridge*

**Wherefore,** Plaintiff seeks judgment in Plaintiff's favor and damages against Defendants Jointly & Severally as Determined By the Trier of Fact Based on the Following Requested Relief:

Statutory Damages of $4,000 under Count I;

Statutory Damages of $3,000 under Count II;

Enjoinder from Future Violations as to Count III;

Recovery of All Costs, Expenses, and or Fees Necessary to Bring and Litigate the Action to Judgment;

Pre-Judgment Interest under State Law as Allowable;

Post Judgment Interest as Allowable under 28 U.S.C. § 1961;

, and Such Other & Further Relief the Court Deems Necessary, Just, and or Proper.

Respectfully Submitted,

X _Clinton [signature]_       9-27-2022
Clinton Strange                Dated
*Pro Se*
7021 Winburn Drive
Greenwood, LA 71033
(318) 780-6136
StrangeC982@gmail.com

---

*Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 719 P.2d 531, 535-37 (1986)); *Wright*, 406 P.3d at 1155 ("We conclude that RCW 19.190.040 establishes the injury and causation elements of a CPA claim as a matter of law.").